1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

JUAN VASQUEZ-SANTIAGO,

                    Petitioner,

        v.

UNITED STATES OF AMERICA,

                    Respondent.

Case No.  C05-5303RJB
                CR02-5075JET

ORDER DENYING SECTION
2255 PETITION

        This matter comes before the court on petitioner's motion to vacate, set aside, or correct his

sentence under 28 U.S.C. § 2255. Dkt. 1.  The court has considered the pleadings filed in support of and in

opposition to the motion and the file herein.

FACTUAL AND PROCEDURAL HISTORY

        On January 16, 2002, Petitioner Juan Vasquez-Santiago and his co-defendant, Oscar Acosta

Delgado, were arrested.  At his initial appearance, the Court appointed Miriam Schwartz, of the Federal

Public Defender's Office, to represent Petitioner. Dkt. 7-1 at 2.  On January 30, 2002, the grand jury

returned a two-count indictment charging Petitioner and Mr. Delgado with one count of conspiracy to

distribute 500 grams or more of a methamphetamine mixture, in violation of 2l U.S.C. §§ 841(a)(1),

(b)(1)(A), and 846; and one count of possession of 500 grams or more of methamphetamine mixture with

intent to distribute, in violation of 2l U.S.C. §§ 841(a)(1) and (b)(1)(A).  Dkt. 7-2 at 5-6.  The mandatory

minimum sentence for each count was ten years. 21 U.S.C. § 841 (b)( 1 )(A).

On March 10, 2002, counsel for Petitioner moved to withdraw and requested substitution of counsel. Dkt. 7-4 at 3-5. In the supporting affidavit, counsel noted that Petitioner believed he needed a new attorney because other defendants received shorter sentences than he faced for larger quantities of drugs than he handled. *Id.* The District Court ruled that although counsel would not be permitted to withdraw, Petitioner could have additional counsel. Dkt. 7-1 at 3. The Court appointed William Michelman to also represent Petitioner.

On March 29, 2002, Petitioner entered a plea of guilty to both counts of the indictment before Magistrate Judge Arnold. *See* Dkt. 7-2 and 7-3. At this hearing, Mr. Michelman explained that Petitioner would enter two guilty pleas without the benefit of a plea agreement. Dkt. 7-2 at 26-29. The government had conditioned its plea offer to Petitioner on obtaining a guilty plea from both defendants, but Mr. Delgado would not accept the government's offer. Therefore, the government withdrew its offer to Petitioner. *Id.* at 34. Counsel then indicated that Petitioner wanted to enter guilty pleas to the charges so that he could secure a reduced sentence range for having accepted responsibility. *Id.* at 29-30.

The magistrate judge expressed some concerns about taking a plea without a written plea agreement, particularly since Petitioner did not speak English. Dkt. 7-2 at 30. Petitioner's counsel noted that he anticipated this problem and that he had advised Petitioner of his situation. *Id.* at 31. Counsel further noted that if Petitioner received a three-level reduction for acceptance of responsibility based upon a guilty plea and concurrent sentences, he anticipated the low end of his sentence range would be 121 months. *Id.* at 32. Because of the possible three-level reduction for acceptance of responsibility pursuant to USSG § 3E 1.1, counsel noted that it was advantageous to petitioner to enter a plea. Dkt. 7-3 at 32. As a consequence, the Court proceeded with a detailed plea colloquy to ensure that Petitioner understood the factual basis for and consequences of his plea. *See* Dkt. 7-2 and 7-3.

During this hearing, the magistrate judge specifically inquired as to three elements critical to this petition in order to ensure that Petitioner proceeded intelligently and voluntarily. First, he ensured that Petitioner understood that the Sentencing Guidelines would apply and that his plea secured him no guarantee as to his eventual sentence length. Dkt. 7-3 at 6. Second, he asked Petitioner to verify the truthfulness of the facts contained in the plea agreement in order to establish a factual basis for his pleas, i.e. to ensure he understood the factual foundation of the charges. Although Petitioner's charges refer to

500 grams or more of a mixture containing methamphetamine, the associated proposed plea agreement more specifically stated the factual basis of these charges. These facts, which Petitioner admitted during this colloquy, indicate his sale of a total of 703 grams of a mixed substance containing methamphetamine, of which 274.1 grams were actual, pure methamphetamine. *Id.* at 8-9. Third, the Judge verified Petitioner's understanding of the separate and distinct nature of the two charges against him, and verified that he understood he was pleading guilty to two charges and not just one. *Id.* at 14-16. Petitioner did plead guilty to both charges, and the magistrate judge was satisfied that his plea was voluntary and had a factual basis. *Id.* at 16-17. The District Court accepted the plea on the magistrate judge's report and recommendation on April 1, 2002. Dkt. 7-2 at 13.

Petitioner appeared for sentencing on June 14, 2002. Before the sentencing, he sent a letter to the District Court requesting new counsel, which the Court denied. Dkt. 7-4 at 6, Dkt. 7-3 at 24. Petitioner did not dispute that his total offense level was 31 (level 34 based upon the amount of drugs minus three points for acceptance of responsibility pursuant to USSG § 3E1.1, as a result of his guilty plea) and that his criminal history level was IV, resulting in a sentencing range of 151 to 188 months. Dkt. 7-3 at 24. Petitioner's counsel also discussed Petitioner's prior drug convictions, his difficult circumstances, and his difficulty in comprehending his legal situation. *Id.* at 26. Similarly, his counsel's sentencing memorandum specifically raised the issues of his poor background, limited education, and desire to help his family through work in the United States. *See* Defendant Juan Vasquez-Santiago's Sentencing Memorandum at 3. The Court sentenced Petitioner to 168 months, the middle of the Sentencing Guidelines range. Dkt. 7-3 at 32.

Petitioner appealed his conviction to the 9th Circuit Court of Appeals, which affirmed his conviction and rejected all of his claims. *See* Dkt. 7-5. Petitioner claimed that his plea was not knowing and voluntary because the District Court failed to inform him of his right to cross examine witnesses and that the District Court failed to provide an adequate justification for its sentence. Notably, the 9th Circuit found that the record showed that his claims that "the district court erred in accepting his plea because he was unaware of the elements of the offenses or his potential sentence, and that it improperly interfered with his guilty plea" were without merit. Dkt 7-5 at 2 (*United States v. Vasquez-Santiago*, 110 Fed.Appx. 826 (9th Cir. 2004) (unpublished)).

1

<u>CLAIMS</u>

2    Petitioner first claims that he was denied effective assistance of counsel because his counsel (1)

3    failed to inquire into his learning disabilities; (2) failed to object to "anything the government presented no

4    evidence"; (3) failed to investigate his educational level; (4) failed to independently test the drugs; (5)

5    convinced or coerced him that he was to plead to one count versus two counts of the indictment, and (6)

6    failed to establish a record as to *Apprendi/Booker* issues.  Second, he claims that his conviction was

7    coerced and/or involuntary because he did not know he was pleading to two charges and because his

8    attorney did not inform him of the actual sentence he could face by pleading guilty.  Third, he claims that

9    the Court improperly relied on the Presentence Report and incorrectly calculated the amount of

10   methamphetamine involved for purposes of sentencing.  Fourth, he claims that the Court improperly

11   increased his sentence based on facts not established beyond a reasonable doubt. Dkt 1 at 4, 11-12.

12

<u>STANDARD</u>

13   "If the court finds that the judgment was rendered without jurisdiction, or that the sentence

14   imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a

15   denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to

16   collateral attack, the court shall vacate and set the judgment aside and shall discharge the prisoner or

17   resentence him or grant a new trial or correct the sentence as may appear appropriate."  28 U.S.C. § 2255.

18   The burden of proof is on the petitioner to show by a preponderance of the evidence why he or she is

19   entitled to collateral relief.  16 Fed. Proc., L. Ed. § 41:511.   In evaluating each claim in the petition, the

20   court applies the relevant legal standard specific to that claim (e.g. "cause and prejudice" procedural

21   default standard, *Strickland* ineffective assistance of counsel standard, etc.).

22

<u>DISCUSSION</u>

23   **1. Ineffective Assistance of Counsel**

24   Petitioner claims that he was denied effective assistance of counsel because his counsel (1) failed

25   to inquire into his learning disabilities; (2) failed to object to "anything the government presented no

26   evidence"; (3) failed to investigate his educational level; (4) failed to independently test the drugs; (5)

27   convinced or coerced him that he was to plead to one count versus two, and (6) failed to establish a record

28   as to *Apprendi/Booker* issues.  The record shows that these allegations are without merit.

ORDER DENYING SECTION 2255 PETITION
Page - 4

To establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and that the deficient performance affected the result of the proceeding. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689. In order to demonstrate prejudice, the defendant must show there is a reasonable probability that but for counsel's unprofessional errors, the result would have been different. *Strickland*, 466 U.S. at 694.

### A. Counsel's Inquiries into his Education Level and Alleged Disabilities

Nothing in the record indicates that Petitioner's attorneys' conduct with respect to Petitioner's alleged disabilities and lack of education fell below an objective standard of reasonableness or adversely affected his sentence. In contrast, it is clear from the record that both Ms. Schwartz and Mr. Michelman were aware of his intellectual and linguistic difficulties in understanding his legal situation and attempted to explain it to him through an interpreter. *See* Dkt. 7-2 at 27-31. During his plea colloquy, the Magistrate Judge was aware of and discussed Petitioner's lack of English skills and his low educational level and proceeded to meticulously, deliberately obtain two separate guilty pleas from him in order to ensure he absolutely understood his situation. *Id*. at 30, Dkt. 7-3 at 14-16. Given the Court's awareness of his difficulties, nothing in the record indicates other than that his attorneys failed to reasonably investigate or account for Petitioner's difficulties, and these allegations are without merit.

### B. Counsel's Lack of Objections and Failure to Independently Verify the Quantity of Drugs

Petitioner's allegations that his attorneys provided ineffective assistance of counsel by not objecting to government evidence and not independently testing the drugs are also without merit because of Petitioner's acknowledgment at his plea colloquy of the evidence against him, including the quantity of drugs at issue. *See* Dkt. 7-3 at 7-9. "A criminal defendant's self-inculpatory statements made under oath at his plea allocution carry a strong presumption of verity and are generally treated as conclusive in the face of the defendant's later attempts to contradict them." *Adames v. United States*, 171 F.3d 728, 732 (2d Cir. 1999), *citing Blackledge v. Allison*, 431 U.S. 63 (1977). Even apart from any conclusive nature of his statements made under oath at the plea allocution, Petitioner has neither claimed that he questioned the quantity of drugs, nor that he told his attorney to object to the quantity alleged before the hearing. His attorney's conduct therefore cannot be considered unreasonable, nor is there any showing of prejudice.

**C.  Counsel's Failure to Advise Petitioner that He Was Pleading Guilty to Two Charges**

Petitioner's fifth allegation, that his counsel convinced him that he was pleading guilty to one count instead of two, is without merit given the record's clear indication of his understanding and assent to two separate guilty pleas.  His dialogue with the Magistrate Judge during his plea colloquy indicates that he was aware of the separate charges and dual guilty pleas.

In order to succeed on this claim, Petitioner must show that, but for his attorney's alleged deficient performance, he would not have plead guilty and instead would have gone to trial.  A plea of guilty generally precludes a petitioner from challenging alleged constitutional violations that occurred prior to the entry of that plea.  *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992), *cert. denied* 506 U.S. 878 (1992).  However, the focus of this allegation is whether his plea was knowingly and voluntarily made.  He contends it was not, due to counsel's errors during the trial.  Where a defendant enters a guilty plea upon the advice of counsel, the voluntariness of the plea can also depend on whether the defendant received effective assistance of counsel.  *Hill v. Lockhart*, 474 U.S. 52, 56-57 (1985).  The two-part test of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to guilty pleas based on ineffective assistance of counsel.  *Hill*, 474 U.S. at 57.  In order to prove ineffective assistance, the defendant must show both that his counsel's performance was deficient and that this prejudiced his case.  *Strickland*, 466 U.S. at 687-90.  The defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have plead guilty and would have insisted on going to trial.  *Hill*, 474 U.S. at 59.

Also, Petitioner's conduct at the hearing clearly indicates that he was aware of the dual charges against him and that he voluntarily plead guilty to both charges.  At the change of plea hearing, Magistrate Judge Arnold thoroughly advised petitioner of the dual and separate counts against him.  Petitioner advised the court that he understood both counts and separately plead guilty to each.  The following excerpts of that exchange indicate his understanding of the plea:

THE COURT: Mr. Michelman wants it to be clear that you were willing to proceed with the other plea agreement under which you would only plead guilty to one charge.  And that the only reason you are not doing that is because the government is unwilling to proceed because Mr. Delgado would not cooperate.  Do you understand that?
THE WITNESS: Yes.
THE COURT: And are you then willing to proceed with your plea to both counts as charged without the plea agreement?
THE WITNESS: Yes.  I want to plead guilty.
THE COURT: All right.  I would [like] to then ask you, sir, Count 1, which charges conspiracy to

1    distribute 500 grams or more of methamphetamine... what is your plea, guilty or not guilty?
     THE WITNESS: Guilty.
2    THE COURT: And with regard to Count 2... what is your plea, not guilty or guilty?
     THE WITNESS: Yes.
3    THE COURT: I'm sorry.  Let's go run that by one more time then.  With regard to the second charge,
     possession of methamphetamine with intent to distribute... is your plead [sic] not guilty or guilty?  That is
4    the second charge.
     THE WITNESS: Could you repeat it again please?
5    THE COURT: Yes... The first charge was conspiracy to distribute methamphetamine.  You have indicated
     that you are entering a plea of guilty to that charge.  The second charge is possession of methamphetamine
6    with intent to distribute... Are you pleading not guilty or guilty to the second charge?
     THE WITNESS: Guilty.
7    Dkt. 7-3 at 10-11.

8    (Petitioner now states that he thought he could plead guilty to only one charge, despite Delgado's choice
     not to accept a plea agreement.)
9
     THE COURT: And do you understand that apparently Mr. Delgado is not willing to plead guilty?
10   THE WITNESS: Yes.
     THE COURT: So do you understand that that means there is no plea agreement, but that you can still
11   plead to both charges?  Or you cannot plead and have a trial?
     THE WITNESS: Yes.
12   THE COURT: All right.  Now, what is your choice?  How do you wish to proceed?
     THE WITNESS: I want to plead guilty.
13   THE COURT: To both charges?
     THE WITNESS: Okay.  Yes, I plead guilty.
14   THE COURT: All right.  Did you wish to plead guilty to both charges?
     THE WITNESS: Yes.
15   THE COURT: And has anyone pressured you in any way?
     THE WITNESS: No.
16
     (The Court then twice proceeded to receive Petitioner's separate, affirmative guilty plea to each charge.)
17   Dkt. 7-3 at 14-16.

18          This exchange, in which the magistrate judge meticulously ensured that Petitioner understood both

19   the nature of the charges against him, and there being two separate counts and two separate pleas,

20   indicates Petitioner's lack of confusion on the matter and the voluntary nature of both guilty pleas.  The

21   magistrate judge's meticulous and repetitive questioning shows that Petitioner's counsel did not act below

22   an objective standard of reasonableness by not taking further steps to ensure that Petitioner understood the

23   consequences of his plea.  Petitioner's claim that he was unlawfully induced to plead guilty because of

24   ineffective assistance of counsel is without merit and does not warrant relief.

25          Also, Petitioner's counsel discussed with him and with the Court Petitioner's intention to secure a

26   reduced sentence by accepting responsibility for his crimes.  Dkt. 7-2 28-32.  Petitioner's counsel diligently

27   ensured that the Court was aware of his client's wishes, and that his client took the appropriate action to

28   realize his goal of reducing his sentence by pleading guilty to both counts.  *Id.* at 32.  This conduct is

1    entirely reasonable and does not constitute ineffective assistance of counsel.

2         **D.  Counsel's Failure to Establish an Adequate Record**

3         Petitioner also alleges that he received ineffective assistance of counsel because his attorneys "failed

4    to establish a *Apprendi/Booker/Fanfan* record for the sentencing court to consider." Dkt. 1 at 12.  The

5    District Court's sentencing does not implicate the *Aprendi* and *Booker* line of cases and counsel cannot

6    have failed to establish such a record; also, there is no showing of prejudice from any ineffective assistance

7    of counsel because his counsel was able to obtain a reduced sentence for him.

8         In 2005, well after Petitioner's 2002 sentencing hearing, the Supreme Court held that the Federal

9    Sentencing Guidelines are no longer mandatory and only advisory, and that "the district courts, while not

10   bound to apply the Guidelines must consult those Guidelines and take them into account when sentencing."

11   *United States v. Booker*, 125 S. Ct. 738, 767 (2005).  Additionally, the Court incorporated the holding of

12   *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and stated that "[a]ny fact (other than a prior conviction)

13   necessary to support a sentence exceeding the maximum authorized by a jury verdict or admitted by the

14   defendant in a guilty plea, must be proven to a jury beyond a reasonable doubt."  *Booker*, 125 S. Ct. at

15   756.

16        With regard to all of petitioner's claims based on *Booker*'s effect on the mandatory nature of the

17   Guidelines, the Supreme Court has not, at this point, made *Booker* retroactive to cases on collateral

18   review.  The Ninth Circuit has similarly determined, under the analysis of *Teague v. Lane,* 489 U.S. 288,

19   310 (1989), that *Booker* does not apply retroactively on collateral review to convictions that became final

20   prior to *Booker*'s pronouncement. *United States v. Cruz*, 423 F.3d 1119, 1120 (9th Cir. 2005), *cert denied*,

21   *Cruz v. U.S.*, 126 S.Ct. 1181 (January 23, 2006).

22        With regard to establishing an *Apprendi* or *Booker* record for appeal, it is not clear what

23   Petitioner's attorneys could have - or should have - done further.  Petitioner's case, even if his counsel

24   should have foreseen *Booker*'s holding, does not implicate *Apprendi* and *Booker*.  First, Petitioner

25   admitted to all facts upon which the sentencing judge relied for his decision.  Second, the sentencing judge

26   did not exceed the statutory maximum sentence in sentencing Petitioner within the range the Sentencing

27   Guidelines required.  Third, Petitioner cannot claim that his counsel failed to adequately establish a record

28   of other factors, such as Petitioner's educational level, that might be relevant should the mandatory nature

of the Sentencing Guidelines have been invalidated; as previously discussed, counsel was aware of and made several relevant factors clear to the court.

Finally, Petitioner has not shown that he was prejudiced by his counsel's alleged inadequate performance.  Petitioner's counsel succeeded in reducing the sentencing range by obtaining a downward adjustment for acceptance of responsibility.  *See* Dkt. 7-3 at 24 (Petitioner's initial offense level was 34, which the Court reduced three levels for acceptance of responsibility for the crimes).  The District Court imposed a sentence within this reduced range; this sentence was substantially below that which Petitioner would have received had he proceeded to trial and been convicted of the charges as originally set forth.

Petitioner has not shown that he received constitutionally ineffective assistance of counsel due to his counsel's allegedly inappropriate response to his language barrier or mental aptitude or his counsel's allegedly improper handling of his case.  Petitioner's multifaceted claim of ineffective assistance of counsel is therefore without merit.

**2. Involuntary or Coerced Guilty Plea**

Petitioner claims that he did not enter a knowing and voluntary guilty plea and instead was coerced and misled because he thought he was pleading to one charge instead of two and because his counsel misinformed him of the true length of sentence he faced.  Dkt. 1 at 12-13.  As the 9th Circuit found, these allegations are without merit and Petitioner entirely knowingly and voluntarily entered two guilty pleas following his admission of all facts related to his eventual sentence length.  *See* Dkt. 7-5 (*United States v. Vasquez-Santiago*, 110 Fed.Appx. 826 (9th Cir. 2004) (unpublished)).

To succeed on this claim, Petitioner must show that some factor renders his guilty plea invalid because it was not made intelligently and voluntarily.  A guilty plea is valid if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant.  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985), *quoting Alford v. North Carolina*, 400 U.S. 25, 31 (1970).  The inquiry in a habeas corpus proceeding is whether the underlying plea was intelligent and voluntary, not whether the defendant made a legal miscalculation.  *United States v. Broce*, 488 U.S. 563, 571-572 (1989); *Brady v. United States*, 397 U.S. 742, 755 (1970).

As previously discussed, the record clearly shows that Petitioner knowingly and voluntarily plead guilty to both charges.  This matter needs no further discussion.

1    The record clearly belies Petitioner's claim that he would not have plead guilty had he known the

2    true sentence length he faced.  He alleges that his counsel misinformed him by incorrectly applying the

3    Sentencing Guidelines, and that he would not have plead guilty had he known the true length of his

4    potential sentence.  Dkt. 1 at 12-13.  Presumably, he is claiming that his counsel advised him that he would

5    receive a sentence only accounting for the "500 grams or more" of a mixture containing methamphetamine

6    alleged in the indictments and not accounting for the supporting details in the plea agreement and

7    Presentence Report.  These details, that the 703 gram mixture contained 274.1 grams of pure

8    methamphetamine, increased his base sentencing level by two levels.  Dkt. 7-2 at 5-6.  Nevertheless, the

9    record contradicts Petitioner's allegations:

10

11   THE COURT: Have you had a chance to discuss with [your attorney] what we call sentencing guidelines?
     THE WITNESS: Yes
     ...
12   THE COURT: ... Although, in certain circumstances you may be sentenced below the low end, or above
     the high end, but never more than the maximum.  Do you understand that concept?
13   THE WITNESS: Yes.
     ...
14   THE COURT: Do you understand that there are no guarantees as to what the sentence will be?
     THE WITNESS: Yes.
15   THE COURT: Has anyone made any promises to you about what the sentence will be?
     THE WITNESS: No.
16   THE COURT: Has anyone made any promises to you about what the guidelines are, or will be, if you
     plead guilty?
17   THE WITNESS: No.
     ...
18   THE COURT: [The plea agreement] goes on to say that... the drugs were found to contain 703 grams of a
     mixture or a substance containing methamphetamine, and 274.1 grams of actual methamphetamine.  As far
19   as you know, is that all correct?
     THE WITNESS: Yes.
20   Dkt. 7-3 at 5-6, 8-9.

21   This dialogue clearly indicates that, even if his attorney misinformed him of his potential sentence, he knew

22   he had no guarantee.  Additionally, it clearly indicates that he admitted to the critical fact increasing his

23   sentence level, the 274.1 grams of pure methamphetamine.   His claim that his guilty pleas were not

24   knowing and voluntary is thus without merit.

25        **3. The Application of the Sentencing Guidelines**

26        Petitioner's third and fourth claims are essentially the same claim, that the sentencing judge

27   improperly incorporated facts to which he did not admit and which were not proven beyond a reasonable

28   doubt.  These claims fail given his admission of all facts relevant to his sentencing and given the

ORDER DENYING SECTION 2255 PETITION
Page - 10

1  inapplicability of *Booker* to his case.

2       Petitioner's contention that the district court applied the incorrect standard of proof to determine

3  the quantity of drugs for sentencing is without merit given his admission of all facts relevant to the

4  calculation of his sentence.  Petitioner claims that the District Court improperly increased his sentence level

5  from 32, the level he faced for the "500 grams or more" of a mixture containing methamphetamine, to 34,

6  the level he faced for the actual quantity of pure methamphetamine contained in the mixture, 274.1 grams.

7  *See* USSG § 2D1.1 (Nov. 1 2002).  Petitioner also claims that *Apprendi* prohibits such an increase because

8  the Judge relied on facts not proven beyond a reasonable doubt or contained within his guilty plea.  Dkt. 1

9  at 13.  These claims fail, though, because Petitioner admitted the 274.1 gram quantity of pure

10  methamphetamine prior to his entering his guilty plea, as previously discussed.  Additionally, Petitioner

11  failed to question this fact and the resultant sentence level given numerous opportunities at his plea

12  colloquy, in his sentencing memorandum, and at his sentencing hearing.  Petitioner's claim that the Court

13  calculated his sentence based on unproven facts is without merit.

14       To the extent that Petitioner's third and fourth claims rely on *Booker*, even if he did not admit to

15  the quantities at issue, these claims are barred.  As previously stated, *Booker* does not apply retroactively

16  to cases on collateral review in the 9th Circuit.  Petitioner could not succeed with this argument even had he

17  not admitted the quantities at issue.

18  <u>CONCLUSION</u>

19       Petitioner has not shown that his claims meet the standard for relief under 28 U.S.C. § 2255.  The

20  motion to vacate, set aside, or correct his sentence is therefore DENIED.  The case is dismissed with

21  prejudice.   The Clerk is directed to send uncertified copies of this Order to all counsel of record and to

22  any party appearing *pro se* at said party's last known address.

23       DATED this 19th day of April, 2006.

24

25                            Robert J. Bryan

26                            United States District Judge

27

28